UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE, | CASE NO. 1:15-cv-01806-LJO-EPG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JAMKE, a California general partnership, STACEY CARLSON, in her personal capacity, as Trustee of the Ashlock Family 2013 Trust B, and as Trustee of the Ashlock Family Trust of 1993, GABRIEL ASHLOCK, in his personal capacity and as court appointed administrator of the Estate of Lonnie Ashlock, JOHN A MYRTAKIS, KEN DAVID ELVING, and INVESTWEST PROPERTIES, a California general partnership, | ECF Nos. 35, 43. |
| Defendants. | |
| AND RELATED CROSS ACTIONS | |

## I. INTRODUCTION

Plaintiff United States Postal Service ("USPS") brings this action against Defendants JAMKE, a California general partnership, and JAMKE partners Ken David Elving and John A. Myrtakis (collectively, "JAMKE"), Stacey Carlson, in her personal capacity and as Trustee of the of the Ashlock Family 2013 Trust B and the Ashlock Family Trust of 1993 ("Carlson"), Gabriel Ashlock in his personal capacity and as court appointed administrator of the Estate of Lonnie Ashlock ("Gabriel"[1]), and Invest West Properties ("Invest West"), a California general partnership,  to enforce the fixed price purchase option provision contained in its long-term lease agreement for the Merced Post Office. Plaintiff brings

---

[1] Because there are multiple individuals and trusts with the name "Ashlock" involved in this dispute, the Court refers to individuals with the surname Ashlock by their first names.

1

this motion for summary judgment and asks the Court to order Defendants to sell the Merced Post Office to USPS for $300,000. This matter is suitable for disposition without oral argument. *See* Local Rule 230(g).

## II. **FACTUAL BACKGROUND**

The lease in this dispute spans a fifty-year time period, during which the parties to the contract changed several times. The contractual relationship began in 1965, when the Leo A. Daly Company and USPS (formerly the Post Office Department) entered into a lease for real property at 2334 M Street in Merced, California ("Merced Post Office" or "Property"). Since that time, USPS has operated a Post Office location on the property. (First Amended Complaint ("FAC"), ECF No. 14 ¶ 1.) The 1965 lease ("1965 Lease Agreement") featured an initial twenty-year term, followed by options for six additional 5-year terms. (Ford Decl., ECF No. 35, ¶ 4; USPS Exhibit ("Ex.") 1, ECF No. 36.) All told, USPS could lease the property for a total of fifty years, and the lease would expire at the end of November 2015 if USPS exercised all of its options to extend the term of the lease. (Ex. 1-1.) To exercise a renewal option, USPS was required to give the lessor (which was defined in the 1965 Lease Agreement as "Leo A. Daly Co. . . . its successors, and assigns") written notice of its intent to exercise the next option at least 120 days before the end of the lease term or renewal term. (*Id.*)

The 1965 Lease Agreement also granted USPS an option to purchase the property for a fixed price at the end of the initial twenty-year lease term and at the end of each 5-year renewal term, including the sixth and final term. (*Id.* at 1-5.) At each potential purchase point, the purchase price was lower than the last one. (*Id.*) To exercise the purchase option, USPS was required to give the lessor "notice of the election to purchase at least one year in advance" of the end of the lease period or renewal period. (*Id.*) At the end of the full fifty-year term, assuming all the options to extend the term of the lease had previously been exercised, USPS had the option to purchase the property for $300,000. (*Id.*) The 1965 Lease Agreement was recorded on March 9, 1966. (*Id.* at 1-9.)

The 1965 Lease Agreement was amended twice. A 1967 amendment required USPS to pay

2

property taxes. (Ex. 3-9.) The 1967 Amendment was recorded on September 27, 1967. (*Id.* at 3-11.) A second amendment in 1981 ("1981 Amendment") reduced the rental payments and provided that USPS would pay maintenance costs for the property. (*Id.* at 3-1, 3-2.) The 1981 Amendment also gave USPS the option to purchase the property for fair market value at any time prior to the termination of the lease or subsequent renewal periods. (*Id.* at 3-2.) The 1981 Amendment stated that the fair market value purchase option was "in addition to any other purchase options available under the lease of this property." (*Id.* at 3-3.) The 1981 Amendment was recorded on May 14, 1982. (*Id.* at 3-8.)

The property was also transferred several times throughout the years. On May 9, 1966, Leo A. Daly Co. executed a mortgage note and deed of trust with Country Life Insurance Company for the Property. (Ex. 2; Ford Decl. ¶ 5.) An Assignment of the Lease was recorded on June 2, 1966 with the deed of trust, specifically stating that "all of the said Mortgaged Premises [have] been demised under a lease to the United States [Postal Service] by a lease dated December 15, 1965[.]" (*Id.*) In 1987, Country Life foreclosed on the Property pursuant to the mortgage note and deed of trust. (Gabriel Answer, ECF No. 20 ¶ 1(n); JAMKE Answer, ECF No. 21 ¶1(i); Deed, Ex. 8.) Defendant JAMKE then purchased the Property at a foreclosure/trustee sale on April 12, 1988. (*Id.*)

Within months of acquiring the Property, JAMKE conveyed a one-half interest in the property to Lonnie Ashlock ("Lonnie").[2] (Joint Statement of Undisputed Material Facts ("UMF"), ECF No. 50-1, no. 8; Gabriel Answer ¶ 1(o); JAMKE Answer ¶ 1(j); Deed, Ex. 8.) JAMKE also agreed to be the property manager. (JAMKE 30(b)(6) Dep., Ex. 28 ("JAMKE Dep."), 69:5-70:20; 83:24-85:8; 119:14-17.) As the property manager, JAMKE arranged property maintenance, collected rent and other payments from USPS, paid the property insurance and property taxes, arranged for reimbursement of the property taxes from USPS, and conducted all communications with USPS – including receiving and accepting each of USPS's lease renewal notices to extend the lease beginning in 1990. (JAMKE Dep.

---

[2] Lonnie Ashlock's first name is alternately spelled "Lonni" and "Lonnie" in various documents used in this case. For consistency's sake, the Court uses the spelling "Lonnie" throughout this order.

67:1-73:18, 75:10-77:21, 82:23-85:8; Lease Renewals, Ex. 4.) Between 1988 and 2013, JAMKE and Lonnie conducted various property transfers between themselves. (Ex. 8.) The last transfer in 2013 resulted in recorded deed showing that a one-half interest was conveyed from Lonnie, as Trustee of the Lonnie Ashlock Family Trust of 1993, to Defendant Stacey Carlson ("Carlson"), as Trustee of the Ashlock Family 2013 Trust B ("Ashlock Trust B"). (Deed, Ex. 10.) JAMKE retained ownership of the other half of the Property and continued to act as the property manager throughout this time. (*Id.*; JAMKE Dep. 108:15-22; 143:4-8.)

For fifty years, USPS made all of the rent, tax, and maintenance payments required under the 1965 Lease Agreement and amendments. (Ford Decl. ¶ 13; JAMKE Dep.57:1-68:13, 79:1-21; 80:8-10; JAMKE RFA Resp., Ex. 23-2, ##3-4; JAMKE Rog. Resp., Ex. 24-3, 23-4, #19.) USPS also timely exercised all six lease renewal options. (UMF no. 10; Lease Renewals, Ex. 4). The last lease renewal expired on November 30, 2015. (Ex. 1-1; Ex. 3-2.) Prior to November 30, 2014, Sean Ford, a USPS Contracting Officer, sent written notice via mail and personal service to JAMKE that USPS was exercising its purchase option under the 1965 Lease Agreement to purchase the Property for $300,000 at the end of the sixth lease period (November 30, 2015). (Letters, Ex. 13; JAMKE Dep. 138:1-140:7; JAMKE Answer ¶ 1(n).) USPS also sent written notice to Carlson of its election to purchase the Property more than a year before the expiration of the lease. (Letters, Ex. 14; Carlson Answer, ECF No. 23, ¶ 1.) Both JAMKE and Carlson admit to receiving timely notice. (UMF no. 15; JAMKE Dep. 138:1-140:7; JAMKE Answer ¶ 1(n); Carlson Answer ¶ 1.)

In February 2014, Lonnie Ashlock's adult son, Defendant Gabriel, recorded a notice of pendency of court action on the Property which disputed Carlson's ownership. (Ex. 11.) On October 25, 2016, the Superior Court of California, County of Stanislaus issued an interim judgment in favor of Gabriel, finding that Carlson had fraudulently transferred the Property to Ashlock Trust B, and imposing a constructive trust upon the undivided half interest in the Property. (Gabriel Exhibit A ("Ex. A"), ECF No. 44-5, at 11-12.)

Prior to November 30, 2015, USPS transferred $325,000 into an escrow account to pay for the Property and cover escrow costs. (UMF no. 17; Escrow Funds, Ex. 19.) Defendants did not appear at the closing scheduled by USPS on November 30, 2015, and have refused to transfer title of the Property to USPS. (UMF nos. 17, 18.) The appraised value of the Property in 2013 was approximately $1,380,000. (ECF No. 44 at 7.)

### III. PROCEDURAL BACKGROUND

Plaintiff filed suit against Defendants, seeking declaratory relief and specific performance of the lease agreement on November 30, 2015. Plaintiff filed the FAC on February 25, 2016. Defendants JAMKE and Gabriel filed crossclaims against Carlson and counterclaims against USPS for declaratory relief, inverse condemnation, and quiet title. (ECF Nos. 20, 21.) A trial date is currently set for May 16, 2017. This Court has jurisdiction pursuant to 39 U.S.C. § 409(a), which provides that United States District Courts have original jurisdiction over all actions brought by USPS. Venue is proper in this Court.

On November 10, 2016, Plaintiff filed a motion for summary judgment. (ECF No. 35.) JAMKE and Gabriel opposed the motion on December 1, 2016. (ECF Nos. 44, 45.) Carlson did not file an opposition. Plaintiff filed a reply on December 8, 2016. (ECF No 50.). The matter was taken under submission on the papers and is ripe for review.

### IV. PROCEDURAL AND EVIDENTIARY ISSUES

A.  **Failure to Provide a Joint Statement of Undisputed Facts**

Defendants argue that the motion for summary judgment should be denied as procedurally improper because Plaintiff violated the Scheduling Order (ECF No. 25) by submitting a separate statement of undisputed facts with its motion, as opposed to the joint statement required by the Order. (ECF No. 44 at 1; ECF No. 45 at 2-3.) Plaintiff counters that it met and conferred with defense counsel about the undisputed facts prior to filing its motion and the parties were unable to come to an agreement. (ECF No. 50 at 10.) As a result, Plaintiff filed a separate statement of undisputed facts accompanying its

motion. (*Id.*) It appears both parties have addressed any potential issue through the submission of a statement of undisputed facts that was revised by all parties over the course of the briefing period. (ECF No. 50-1.) Since the procedural infirmity has been resolved, it is proper to rule on the substance of the motion. *See Arrieta v. Cty. of Kern*, 161 F. Supp. 3d 919, 923 (E.D. Cal. 2016) (ruling on summary judgment motion despite parties' failure to meet and confer before filing, where parties met and conferred shortly after and certified issues raised should be addressed as submitted).

B. **<u>Evidentiary Issues</u>**

Defendants object to most of the evidence offered by Plaintiff in support of its motion, including the authenticity of the 1965 Lease Agreement and 1981 Amendment. Plaintiff objects to Defendants' proffered expert testimony by Sidney A. Israels, Esq.

"At the summary judgment stage, [a court] do[es] not focus on the admissibility of the evidence's form. [A court] instead focus[es] on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). In other words, on summary judgment, evidence need not be in a *form* that is admissible at trial. *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To the extent that Plaintiff's objections are based on arguments that evidence is "conclusory," "vague" or "abstract," such objections are unnecessary because they duplicate the summary judgment standard. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context." (emphasis in original)). Such objections are unnecessary when made to evidence presented in support of a motion for summary judgement as the court is not in danger of prejudice and the summary judgment standard dictates that summary judgment can be granted "only when there is no genuine dispute of *material* fact." *Arias v. McHugh*, No. CIV. 2:09-690 WBS GG, 2010 WL 2511175, at *6 (E.D. Cal. June 17, 2010) (citing *Burch*, 433 F. Supp. 3d at 1119-20).

1  Plaintiff's objections brought on any of the above grounds are therefore OVERRULED.

2      Defendants specifically object to the admission of the 1965 Lease Agreement (Ford Decl. ¶ 4,
3  Ex. 1) and the 1981 Amendment (Ford Decl. ¶ 6, Ex. 3) on the grounds that they are marked as
4  duplicates, contain handwritten words not initialed by the parties, and that the 1981 Amendment was
5  never authenticated by any of the signatories. (ECF No. 44 at 11-12; ECF No. 45 at 4). Defendants
6  allege that these documents fail to comply with the best evidence rule. (*Id.*) Defendants further object to
7  the Ford Declaration on the grounds that Ford, a USPS Real Estate Specialist and Contracting Officer,
8  was not employed by USPS when the 1965 Lease Agreement and 1981 Amendment were executed, and
9  therefore cannot authenticate them or draw conclusions about them on the basis of personal knowledge.
10 (*Id.*)

11     Defendants' argument that Ford cannot make statements about or authenticate the documents in
12 USPS's contract file because he did not work for USPS when the documents were executed is incorrect.
13 Evidence may be authenticated by a "witness with knowledge . . . that an item is what it is claimed to
14 be," Federal Rule of Evidence 901(b)(1), and "such knowledge may be inferred from the witness's
15 position and the nature of his participation in the matters to which he attests." *Lehman Bros. Holdings v.*
16 *PMC Bancorp*, 612 F. App'x 885, 887 (9th Cir. 2015). Evidence can be authenticated when a party's
17 employee states that his declaration is based on "employment experience as well as from knowledge
18 obtained after reasonable inquiry and review of the records." *Id.*; *see also Orr v. Bank of Am., NT & SA*,
19 285 F.3d 764, 773-74 (9th Cir. 2002) ("A document can be authenticated under Rule 901(b)(1) by a
20 witness who wrote it, signed it, used it, or saw others do so." (citing 31 Wright & Gold, Federal Practice
21 & Procedure: Evidence § 7106, 43 (2000)). The Ford Declaration satisfies these requirements. Ford
22 confirmed that his job routinely includes reviewing property files to complete purchase agreements that
23 include fixed price purchase options, and he is familiar with the contents of the USPS contract file and
24 associated documents specifically relating to the Property. (Ford Decl. ¶¶ 1-3.) He reviewed the
25 documents in the file and prepared to acquire the Property and "oversaw numerous acquisition-related

tasks." (*Id.*) Ford therefore "used" or saw others use the documents that he authenticated. Therefore Defendants' objections to the Ford Declaration are OVERRULED.

Defendants' objection that USPS did not produce original versions of the lease documents is similarly flawed. Since the court focuses on the admissibility of evidence's contents at summary judgment, rather than its form, "objections brought on the basis of a failure to comply with the best evidence rule are inappropriate." *Lindell v. Synthes USA*, 155 F. Supp. 3d 1068, 1071 (E.D. Cal. 2016); *see also Alvarez v. T–Mobile USA, Inc.*, No. CIV. 2:10-2373 WBS, 2011 WL 6702424, at *4 (E.D. Cal. Dec. 21, 2011) (same).[3] Moreover Federal Rule of Evidence 1003 states that, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Apart from generically challenging the admissibility of copies of the lease documents, Defendants raise no questions about the duplicate or the authenticity of the original on which it is based. Defendants' objections to the authenticity and admissibility of the 1965 Lease Agreement and 1981 Amendment are OVERRULED.

In support of their contention that a disputed fact exists as to whether the fair market value purchase option in the 1981 Amendment superseded or rendered ambiguous the fixed price purchase option in the 1965 Lease Agreement, Defendants offer the Declaration of Sidney A. Israels ("Israels Declaration"), an attorney with expertise in interpreting complex real estate transactions and contracts. (ECF No. 44-3; ECF No. 44 at 12; ECF No. 45 at 7.) Plaintiff objects to the Israels Declaration on the grounds that it contains improper legal conclusions and is unnecessary to aid the Court in interpreting the contract. (ECF No. 50 at 4.)

"Under Federal Rule of Evidence 702, matters of law are inappropriate subjects for expert

---

[3] Both JAMKE and Gabriel authenticated copies of the 1965 Lease Agreement and 1981 Amendment, and indeed incorporated them by reference in their respective answers. (ECF No. 20 ¶¶ 1(e), 1(m); ECF No. 21 ¶¶ 1(d), 1(g).) The documents submitted as Exhibits 1 and 3 to Plaintiff's motion, unlike the versions attached to the FAC, do contain some handwritten markings, which the Court disregards. Having already admitted in their respective answers that each document is a true and correct copy of the 1965 Lease Agreement and 1981 Amendment, Defendants cannot create a triable issue of fact by changing their position as to the authenticity of the document.

8

testimony." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012). Generally, contract interpretation is not an appropriate subject for expert testimony, because it requires an expert to make conclusions of law. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("an expert witness cannot give an opinion as to [their] legal conclusions, i.e., an opinion on an ultimate issue of law") (emphasis omitted); *Sparton Corp. v. United States*, 77 Fed. Cl. 1, 8 (2007) ("In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language.") (collecting cases). Furthermore, Federal Rule of Evidence 702 allows expert testimony when it would "help the trier of fact to understand the evidence or to determine a fact in issue." The opinion of an expert on the law is unnecessary because "a judge's special knowledge is presumed to be sufficient." *United States v. Brodie*, 858 F.2d 492, 496-97 (9th Cir. 1988) (quoting *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986), *overruled on other grounds*.

Here, Israels offers opinions on the interpretation and interrelation of the terms of the 1965 Lease Agreement and 1981 Amendment. His testimony consists primarily of legal conclusions and is otherwise unnecessary to assist the Court in interpreting the plain language of the contract. Therefore, the Court disregards it.

### V. **STANDARD OF DECISION**

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id.* When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## VI. ANALYSIS

Plaintiff submits that the 1965 Lease Agreement contains a fixed price purchase option, which remained in place through the time that Plaintiff exercised it in accordance with its terms in November 2014. Setting aside the evidentiary disputes that the Court addressed above, Defendants outline four grounds upon which they believe summary judgment should be denied.

The first and central issue regards the continued validity of the fix purchase option contained in the 1965 Lease Agreement. Defendants argue that the fixed price purchase option was voided by the subsequent 1981 Amendment to the lease, or, in the alternative, that the subsequent amendment renders the purchase options contained in the lease agreement ambiguous such that the issue cannot be resolved on a motion for summary judgment. Second, Defendants suggest that 1988 foreclosure sale may have voided the lease. Third, Defendants contend, in the alternative, that a triable issue of fact exists as to whether USPS properly exercised the purchase option by notifying the owners of the Property of its decision to exercise the option. Finally, in addition to the Defendants' disagreement with Plaintiff's identified undisputed facts, Defendants argue that Plaintiff is precluded from summary judgment because it has unclean hands.

A. **1965 Lease Agreement and 1981 Amendment**

Defendants argue that the 1981 Amendment voided the purchase option in the original lease, or, in the alternative, that the integrated contract is ambiguous as to whether the fixed price purchase option could still be exercised in November 2014. Because the meaning of the contract is unclear, Plaintiff argues, the Court cannot decide the issue as a matter of law.

Federal law governs the interpretation of contracts when the government is a party to the contract. *United States v. Seckinger*, 397 U.S. 203, 209-10 (1970); *see also Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) (applying federal law to interpretation of a contract where the government is a party); *United States Postal Service v. Ester*, 863 F.3d 1189, 1195 (9th Cir. 2016) (applying federal law to postal lease entered between USPS and private lessor). Under federal contract law, the Court looks to "general principles for interpreting contracts." *Patterson*, 204 F.3d at 1210 (citing *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989)). "In contract interpretation, the plain and unambiguous meaning of a written agreement controls." *Arko Executive Services v. United States*, 553 F.3d 1375, 1379 (Fed. Cir. 2009) (internal quotation marks and citations omitted). The contract must be construed to effectuate its spirit and

11

purpose giving reasonable meaning to all parts of the contract. *Id.* (internal quotation marks and citations omitted). To exercise an option to the contract validly, the government must exercise the option in exact accord with the terms of the contract. *Id.* (internal quotation marks and citations omitted).

Determination of whether the provisions of a contract are "clear and unambiguous," and interpretation of provisions deemed "clear and unambiguous," are questions of law amenable to summary adjudication. *United States v. Sacramento Mun. Util. Dist.*, 652 F.2d 1341, 1343-44 (9th Cir. 1981). However, if the Court determines that the contractual language is unclear, summary judgment is inappropriate, as "differing views of the intent of the parties will raise genuine issues of material fact." *Id.* at 1344 (citing *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 465 (5th Cir. 1967)). "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous." *Kennewick Irrigation Dist.*, 880 F.2d at 1032 (citations omitted). "A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Id.* (citations omitted).

The Court agrees with Plaintiff that the contract is not ambiguous. The plain language of both the 1965 Lease Agreement and the 1981 Amendment are clear that USPS had a valid option to purchase the property for a fixed price at the termination of the lease on December 1, 2015. The 1965 Lease Agreement provided for a 20-year lease to USPS, followed by six 5-year renewal periods. (Ex. 1-1.) Under the terms of the contract, USPS had the unilateral option to renew the lease at the expiration of the 20-year lease and each renewal period, (*id.*), which it exercised for each of the six 5-year renewal periods, (Ex. 4). The 1965 Lease Agreement further provided that "the Government shall have the option to purchase the fee simple title to the leased premises, including the underlying land at the following respective times and prices: . . ."[a]t the end of the sixth 5-year renewal option term . . . $300,000." (Ex 1-5.)

Defendants argue that the 1981 Amendment, which added an option for USPS to purchase the property at fair market value at any time, superseded the fixed price option contained in the 1965 Lease Agreement and rendered it void. However, the 1981 Amendment did not remove the fixed price

purchase option. In fact the amendment stated that the fair market purchase option was "in addition to any other purchase options available under the lease of this property." (Ex. 3-3.) To interpret the 1981 Amendment to void the fixed price purchase option, the only purchase option in the original lease, would be to render this language meaningless. Furthermore, the 1981 Amendment provided that "[a]ll provisions of the [1965 Lease Agreement] unaffected by this amendment are hereby confirmed and shall remain the same." (*Id.*) The language of the amendment is clear; the amendment added a second purchase option without affecting the original fixed price purchase option.

Indeed, the Ninth Circuit confronted nearly identical facts in *United States v. Johnson*. 43 F.3d 1308 (9th Cir. 1995). In *Johnson*, USPS and defendants executed a long-term lease agreement in 1967 that included a fixed price purchase option. *Id.* at 1310. A subsequent 1981 amendment added an option for USPS to purchase the property for fair market value at any time prior to the termination of the lease. *Id.* The amendment included the same language as the 1981 Amendment in the instant case: "[t]his option is in addition to any other purchase options available under the lease of this property." *Id.* Defendants opposed summary judgment, arguing that the validity of the fixed price purchase option was a disputed issue of fact because the interrelationship between the original fixed price purchase option and the subsequent fair market value purchase option was ambiguous. *Id.* Affirming the district court's grant of summary judgment, the Ninth Circuit held that the fair market value purchase option in the amendment "did not supersede the original purchase option," and that USPS was "entitled to exercise either [option]." *Id.*

Defendants argue that *Johnson* is inapposite because it dealt with whether the district court erred in refusing to consider parol evidence to clarify the meaning of the amendment. This argument misses the point. The *Johnson* court affirmed the district court's decision not to consider parol evidence because, as is the case here, the contract language unambiguously supported USPS's right to exercise the fixed price purchase option. Because the contract language was unambiguous, there was no need for the district court to consider parol evidence. Likewise, because the identical language here is

unambiguous, there is no triable issue of material fact.

Defendants also argue that the fixed price option was mooted because the 1981 Amendment changed the lease renewal deadlines. In so doing, Defendants argue, the 1981 Amendment completely replaced the original 5-year option timetables, which extended to the purchase option time table. According to Defendants, "[y]ou cannot have 2 different contracts providing 2 different sets of effective renewal periods." (ECF No. 45 at 6.) Defendants' interpretation is at odds with the plain language of the 1981 Amendment, which explicitly changed the rental amount for each renewal period, but left the renewal schedule from the 1965 Lease Agreement intact. (Ex. 1-1; Ex. 3-2.) The 1981 Amendment merely included specific dates for the renewal periods that corresponded to lease terms in the original agreement. (*Id.*) The "times set out next above" in the 1981 Amendment were the same as those specified in the 1965 Lease Agreement. The fixed price purchase option was not altered by the inclusion of specific dates for the renewal period because the specific dates merely corresponded to the renewal deadlines set out in the 1965 Lease Agreement. (*Id.*)

The language of the contract is clear. The only reasonable interpretation of the contract and subsequent amendments is that the fixed price purchase option contained in the 1965 Lease Agreement remained in place following the 1981 Amendment.

B. **1988 Foreclosure Sale**

In its opposition, JAMKE suggests that USPS has not demonstrated that there is no issue of material fact with respect to whether the 1988 foreclosure sale affected the 1965 Lease Agreement and 1981 Amendment. (ECF No. 45 at 8 ("For instance, there is no citation for what happens when a foreclosure takes place under California law, as was the case here"). Both Gabriel and JAMKE allege that "the Note and Deed of Trust recorded at about the same time as the lease were the product of a construction loan that was being transformed into a permanent take out loan that predated the 1965 Lease and its recordation." (ECF No. 44 at 13.) The import of this statement is apparently that the deed of trust does somehow pre-date the loan agreement, although Defendants admit that "evidence is slim."

14

(*Id.*) Although Defendants' argument in this regard is unclear and not supported by evidence, the Court will briefly address the issue of the 1988 foreclosure sale and the recording of the 1965 Lease Agreement and the 1981 Amendment.

Under California law, the rights of a tenant in possession of real estate under a lease recorded before the execution of a mortgage on the same property are not extinguished by a foreclosure of the mortgage. *Decon Grp., Inc. v. Prudential Mortg. Capital Co., LLC*, 227 Cal App. 4th 665, 670-71 (2014) ("Title conveyed by a trustee's deed [i.e., in a foreclosure sale] relates back in time to the date on which the deed of trust was executed" (internal citations omitted)); *Miscione v. Barton Dev. Co.*, 52 Cal. App. 4th 1320, 1326 (1997). The 1965 Lease Agreement was recorded on March 9, 1966–before the original mortgage note and deed of trust were recorded on May 9, 1966. Because the lease agreement was recorded prior to the deed of trust, the lease was superior and the deed subject to it even after foreclosure.[4]

Although the purchaser's title is subject to a senior lease, such as the 1965 Lease Agreement, it is not generally subject to amendments to the lease executed after the deed of trust was recorded. *See R-Ranch Markets #2, Inc. v. Old Stone Bank*, 16 Cal. App. 4th 1323, 1328-29 (1993), *as modified on denial of reh'g* (July 21, 1993). As the *Old Stone Bank* court noted, "[t]he policy underlying the rule is to protect lending institutions from fraudulent amendments to leases which would encumber the value of their acquired property. *Id* at 1328. Nonetheless, the facts of this case are readily distinguishable. In *Old Stone Bank*, the court held that the amendment to the lease without the bank's consent was junior to the

---

[4] The parties' conduct since the foreclosure sale strongly suggests that all parties believed that the 1965 Lease Agreement and 1981 Amendment remained in effect as of November 2014. Defendants continued to accept USPS's rent and tax reimbursements on the Property starting in 1988 and continuing through the duration of the lease agreement period. (JAMKE Dep. 57:1-68:13, 79:1-21; 80:8-10; JAMKE RFA Resp., Ex. 23-2, ##3-4; JAMKE Rog. Resp., Ex. 24-3, 23-4, #19.) USPS maintained their tenancy for over 25 years after the foreclosure sale, during which period USPS continued to renew their tenancy under the terms of the contract. (Ex. 4.) There is no evidence that Defendants claimed that the lease was invalid until after USPS exercised the fixed price purchase option and initiated this lawsuit. (JAMKE Dep. 152:16-153:5, 154:2-14; Carlson RFA Resp., Ex. 22, #10.) *See Ester*, 836 F.3d at 1198 ("The owners continuously treated the lease, the various lease options, and the purchase option as valid and enforceable for fifty years, and reaped the benefit of their bargain. Now that the term of the lease has ended, and they are faced with losing a valuable piece of property at a price well below its current value, they wish to avoid its burdens. This they cannot do.").

lien of the deed of trust and extinguished by the foreclosure sale. *Id.* However, here, the 1981 Amendment was also recorded in May of 1982, prior to the foreclosure sale. (Ex. 3-8.) At the time JAMKE and Lonnie acquired the property through trust sale, they would have had notice of the 1965 Lease Agreement and the subsequent amendments to the lease because the lease and amendments were recorded. *See First Nat. Bank in Santa Ana v. Coast Consol. Oil Co.*, 84 Cal. App. 2d 250, 255-56 (1948) ("lessor . . . could not, without *notice*, knowledge or consent of the [lender], create a greater burden on the property . . . other than that reserved to it under the original lease" (emphasis added)); s*ee also Old Stone Bank*, 16 Cal. App. 4th at 1328-29 (same).[5] Therefore, neither the original 1965 Lease Agreement nor the 1981 Amendment were extinguished by the 1988 foreclosure.[6]

C.  **Notice to the Parties**

Defendants argue that even if the fixed price purchase option was still in effect in November 2014, there is a question of fact as to whether USPS gave proper notice of its intent to exercise the option in accordance with the terms of the lease because it did not notify Gabriel. According to Defendants, USPS had notice that there was an ongoing dispute between Gabriel and Carlson regarding ownership of the Property at the time that it gave notice. Recently, a California trial court issued an interim decision in favor of Gabriel. (Ex. A at 11-12.) USPS counters that Gabriel was not an owner of record at the time that it was required to give notice, and therefore it discharged its obligations under the contract as a matter of law by giving notice to JAMKE and Carlson.

Under general principles of contract law, an optionee to an option contract can only exercise the option "strictly in accordance with its terms." 15 Williston on Contracts § 46:12 (4th ed. 2010); *see New*

---

[5] Even if the 1981 Amendment were extinguished by the 1988 foreclosure sale, this does nothing to help Defendants' argument. Without the 1981 Amendment, the 1965 Lease Agreement's fixed price purchase option would still be in effect. *See Old Stone Bank*, 16 Cal. App. 4th at 1327 (holding that lease agreement recorded before the deed of trust was not extinguished by foreclosure sale, but unrecorded amendments executed after deed of trust was extinguished by the foreclosure).

[6] Indeed, JAMKE's corporate representative appears to have conceded as much in his 30(b)(6) deposition. (JAMKE Dep. 153:1-5, 154:2-14 ("I believe once we got—once we got into it, we discovered that the lease was recorded prior to the deed of trust so this [affirmative defense for termination of lease due to operation of law] might not be exactly accurate").

*England Tank Indus. of N.H., Inc. v. United States*, 861 F.2d 685, 687 (Fed. Cir. 1988) ("It is well settled that to properly exercise [an] option, the government's acceptance of the offer had to be unconditional and in exact accord with the terms of the contract being renewed."); *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 323 (Fed Cir. 1997) (similar) (citing Corbin on Contracts, § 284 (1963)). "However, we note that this standard of exactitude is calibrated to what the contract actually requires, not an indefinite standard of scrupulous paperwork or best practices." *United States Postal Service v. Ester*, 836 F.3d 1189 (9th Cir. 2016). (citing *Lockheed*, 108 F.3d at 323 ("[A]n option, like any contract, is circumscribed by its terms.")).

The terms of the 1965 Lease Agreement provide that "the Government shall give the Lessor notice of the election to purchase at least one year in advance" of the end of the renewal period. (Ex. 1-5.) At the time USPS gave notice of its election in November 2014, and indeed up to the time USPS filed its motion for summary judgment in November 2016, the Ashlock Trust B, through its Trustee, Carlson, remained the owner of record for the undivided one half interest in the property, along with JAMKE. Therefore, USPS did provide the lessors, the owners of record, with notice in accordance with the terms of the lease. Defendants point to no authority, and this Court can find none, for the proposition that USPS had an obligation to notify Gabriel that it was exercising its purchase option based on the fact that he was involved in pending litigation regarding ownership of the Property.

Furthermore, the Ninth Circuit has held that, absent specific language in the contract requiring more, notice to one lessor of intent to exercise a purchase option is sufficient. *Ester*, 836 F.3d at 1198 (concluding that notice to one lessor was sufficient where "[t]he contract . . . did not by its terms require separate notice to be given to more than one party."). Therefore, even if Gabriel, and not Carlson, had been the owner of record at the time that notice was given, USPS discharged its obligation under the terms of the lease by noticing JAMKE.

Furthermore, contrary to Gabriel's apparent contention, USPS's right to purchase the property under the fixed price purchase option was binding and legally enforceable against whomever owned the

17

property – regardless of whether that was Carlson, Gabriel, or someone else. As previously discussed, the lease agreement was senior to the deed of trust, and any transfer of the property was subordinate to the lease. Consequently, the dispute between Carlson and Gabriel regarding ownership of the property, and Gabriel's allegations of undue influence, fraud, and elder abuse, are not material to the instant dispute beyond the question of whether the proper party was noticed. The undisputed facts confirm that the proper parties were noticed, and the option exercised in accordance with the terms of the contract.

D. **Unclean Hands**

Defendants argue that Plaintiff is not entitled to summary judgment because it has unclean hands. The doctrine of unclean hands requires that those seeking the Court's protection "have acted fairly and without fraud or deceit as to the controversy in issue." *Ellenburg v. Broadway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985). According to Defendants, Plaintiff acted in bad faith by failing to provide notice to the Gabriel given that they knew of Gabriel's potential ownership interest in the Property. This argument is meritless. First, as Plaintiff points out, Defendants raise the affirmative defense of unclean hands for the first time in their opposition. Federal Rule of Civil Procedure 8(b)(1)(A) & (c). A defendant "may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff." *Magana v. Com. of the Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997), *as amended* (May 1, 1997). Here, Plaintiff would be prejudiced if Defendant were allowed to raise this defense for the first time months after the close of discovery. *See Taylor v. First Advantage background Servs. Corp.*, No. 15-cv-02929-DMR, 2016 WL 4762268 (N.D. Cal. Sept. 13, 2016.) Moreover, Defendants have not demonstrated how failing to notify Gabriel, who was not and still is not an owner of record, of its unilateral right to exercise the purchase option on the Property could constitute bad faith.[7]

---

[7] *See Johnson*, 43 F.3d at 1311 ("We do not agree with Johnson that a 'serious injustice' will occur merely because the current value of the property at issue may be higher than the price set forth in the 1967 purchase option. As the district court observed, Johnson is merely being required to perform under the conditions of the contract that he signed.").

USPS bore its initial burden on summary judgment to identify record evidence that "demonstrate[s] the absence of a genuine issue of material fact," which they have done by showing that they exercised the valid fixed price purchase option in accordance with the terms of the agreement. *Celotex*, 477 U.S. at 323, 325 (quoting Fed R. Civ. P. 56(e)). Once USPS made this showing, Defendants were required to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. This required Defendants to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Because the uncontradicted facts support a finding as a matter of law in favor of the Plaintiff, the motion for summary judgment is GRANTED.

## VII. CONCLUSION AND ORDER

For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED. The trial date of May 16, 2017 is VACATED.

On or before January 20, 2017, Plaintiff is directed to submit a form of judgment consistent with this Memorandum Decision and Order and email a word processing version of that order to ljoorders@caed.uscourts.gov.

IT IS SO ORDERED.

Dated: **January 11, 2017**         /s/ Lawrence J. O'Neill
                                    UNITED STATES CHIEF DISTRICT JUDGE