**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| UNITED STATES POSTAL SERVICE, | CASE NO. 1:15-cv-01806-LJO-EPG |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS MOTIONS FOR A NEW TRIAL, OR IN THE ALTERNATIVE, FOR MODIFICATION OF JUDGMENT AND INSTRUCTIONS |
| v. | |
| JAMKE, a California general partnership, STACEY CARLSON, in her personal capacity, as Trustee of the Ashlock Family 2013 Trust B, and as Trustee of the Ashlock Family Trust of 1993, GABRIEL ASHLOCK, in his personal capacity and as court appointed administrator of the Estate of Lonnie Ashlock, JOHN A MYRTAKIS, KEN DAVID ELVING, and INVESTWEST PROPERTIES, a California general partnership, | ECF Nos. 60, 62. |
| Defendants. | |
| AND RELATED CROSS ACTIONS | |

## I. BACKGROUND

Plaintiff United States Postal Service ("USPS" or "Plaintiff") brought suit against Defendants JAMKE, a California general partnership, and JAMKE partners Ken David Elving and John A. Myrtakis (collectively, "JAMKE"), Stacey Carlson, in her personal capacity and as Trustee of the of the Ashlock Family 2013 Trust B and the Ashlock Family Trust of 1993 ("Carlson"), Gabriel Ashlock in his personal

capacity and as court appointed administrator of the Estate of Lonnie Ashlock ("Gabriel"[1]), and Invest West Properties ("Invest West"), a California general partnership, to enforce the fixed price purchase option provision contained in its long-term lease agreement for the Merced Post Office. The agreement provided that at the termination of the long-term lease on November 30, 2015, USPS had the option to purchase the Merced Post Office property for $300,000.

On January 12, 2017, the Court granted summary judgment in favor of USPS. (ECF No. 52.) The Court held that USPS had properly exercised its valid purchase option, and that Defendants had breached by failing to convey title to USPS after the lease ended on November 30, 2015 in accordance with the terms of the agreement. (*Id.*)

The Court ordered USPS to submit a proposed final judgment detailing the terms for specific performance, which USPS filed on January 20, 2017. (ECF No. 53.) Defendants filed objections to the proposed order on January 31, 2017. (ECF Nos. 54, 55.) Specifically, Defendants objected to the Court's ordering specific performance, the proposed distribution of escrow funds, and asserted that they were owed rent, prejudgment interest, taxes, insurance premiums, and other costs. (*Id.*) Defendant Gabriel also asserted that he could not provide quiet title due to a pending state court action. (*Id.*) The Court entered final judgment on February 3, 2017, ordering Defendants to transfer title of the Merced Post Office within 30 days to USPS in accordance with the terms of lease agreement between the parties. (ECF No. 58.) The Court thoroughly addressed Defendants' objections in footnotes 1 through 4 of the judgment. (*Id.*)

On March 3, 2017, Gabriel filed a motion for a new trial, or, in the alternative, for modification of judgment and instructions pursuant to Federal Rules of Civil Procedure 52(b) and 59. (ECF No. 60.) On March 6, 2017, JAMKE filed a motion for a new trial and/or, in the alternative, a motion to alter judgment. (ECF. No. 62.) In their motions, Defendants object to several aspects of the Court's judgment,

---

[1] Because there are multiple individuals and trusts with the name "Ashlock" involved in this dispute, the Court refers to Gabriel Ashlock by his first name.

2

including the Court's determination that Defendants were not entitled to "holdover" rent, interest, taxes, insurance premiums, repair costs, or other costs accrued by Defendants after November 30, 2015. (ECF Nos. 60, 62.) Defendants also objected to being required to pay closing costs. (*Id.*) Defendant Gabriel raised other issues with respect to its ability to provide quiet title to USPS. (ECF No. 60.)

After filing their motions, Defendants conveyed title of the Merced Post Office property to USPS pursuant to this Court's February 3, 2017 judgment. (Declaration of M. Anderson Berry ("Berry Decl.") ¶ 2, Ex. 1, ECF No. 67-1.) The deeds were recorded on March 13, 2017. (*Id.*) USPS paid all closing costs, in the amount of $4,592. (*Id.* ¶ 6, Ex. 2.) USPS also paid Defendants $5,000 for "roof repairs." (*Id.* ¶ 5, Ex. 2.)

USPS opposed the motions on April 18, 2017, noting that several of the issues raised by Defendants had been resolved and therefore mooted in the course of the conveyance. (ECF No. 67.) Defendants submitted a joint reply on April 25, 2017, in which they conceded that the issues raised in their motions had been resolved, with the exception of their request for holdover rent or escrow interest, property taxes, and reimbursement for insurance payments. (ECF No. 68.) This matter is suitable for disposition without oral argument and is ripe for review. *See* Local Rule 230(g).

## II. STANDARD OF DECISION

A. **Rule 59(a)**

A new trial is warranted under Rule 59(a) when the judgment is "contrary to the clear weight of the evidence, or [] based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (internal citations and quotation marks omitted).

B. **Rule 59(e)**

A district court may reconsider its grant of summary judgment under Federal Rule of Civil Procedure 59(e). A motion to alter judgment under Rule 59(e) is appropriate where the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was

3

manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

C. **Rule 52(b)**

Federal Rule of Civil Procedure 52(b) permits a court to amend findings made after a bench trial. Rule 52(b) provides: "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). Motions under Rule 52(b) are primarily designed to correct findings of fact which are central to the ultimate decision; the Rule is not intended to serve as a vehicle for a rehearing. *Davis v. Mathews*, 450 F. Supp. 308, 318 (E.D. Cal. 1978).

### III. ANALYSIS

Several of the issues raised by Defendants in their motions have been mooted by the subsequent conveyance of the Merced Post Office property, and USPS's payment of closing costs and roof repairs. The remaining issues are whether Defendants are entitled to payment of rent or escrow interest, or reimbursement for property taxes or insurance premiums for the period from December 1, 2015 through the close of escrow.

As an initial matter, the Court notes that Defendants' arguments are not properly made as motions under Rule 59(a) or Rule 52. Rule 59(a) applies to motions brought for a new trial following a either a jury trial or a bench trial. Rule 52 applies to motions brought regarding factual findings or conclusions made by the Court. This case was resolved on undisputed facts on summary judgment. Therefore, to the extent that these motions are brought under these rules, they are inappropriate.

To the extent that Defendants argue that the Court should reconsider its judgment under Rule 59(e), Defendants do not argue that any newly discovered evidence or intervening case law affects the Court's initial judgment. Therefore, the Court will consider only whether it "committed clear error or the initial decision was manifestly unjust." *ACandS, Inc.*, 5 F.3d at 1263.

A.  **Rent**

Defendants argue that the Court did not properly address their counterclaim for "holdover" rent allegedly owed by USPS for the period from December 1, 2015 through the close of escrow. In its summary judgment decision, the Court held that USPS properly exercised its valid option to purchase the Merced Post Office property at the agreed price of $300,000. Therefore, on December 1, 2015, USPS was the rightful and equitable owner of the property and Defendants were in breach. In granting summary judgment against Defendants, the Court necessarily concluded that Defendants' counterclaim for holdover rent failed as a matter of law. USPS could not be both the rightful owner as of December 1, 2015 and a holdover tenant. This point bears emphasis: at *no point* was USPS a holdover tenant. Since Plaintiff was the equitable owner as of December 1, 2015, and both parties agree that USPS made all the required rent payments under the contract prior to December 1, 2015 (ECF No. 52 at 4; ECF No. 58 at 3 n.4), USPS does not owe Defendant any rent. *See United States Postal Serv. v. Ester*, 836 F.3d 1189, 1194, 1198 (9th Cir. 2016) (affirming district court's order granting specific performance and denying counterclaim for holdover rent); *United States v. Turley*, No. 15-CV-78-JHP, 2016 WL 8671924, at *11 (E.D. Okla. Nov. 18, 2016) (where USPS was granted summary judgment on similar facts, the court noted that defendant was "not entitled to holdover rent . . . based on the Court's finding that Plaintiff is entitled to specific performance of the purchase option"); *United States v. Americo Fisco Revocable Trust*, No. 1:14CV2579, 2016 WL 4565470, at *6 (N.D. Ohio Aug. 31, 2016) ("[O]nce a lessee exercises an option to purchase . . ., the former lessee cannot be held liable for holdover rents") (citations omitted).

In support of their position that USPS owes holdover rent, Defendants cite *Ellis v. Mihelis*, 60 Cal. 2d 206, 219-20 (1963). In *Ellis*, the court reversed the lower court's grant of specific performance for the plaintiff on the grounds that the statute of frauds precluded enforcement of the contract for sale between plaintiff and defendant. *Id.* at 219. In discussing the damages awarded by the lower court, the court observed that, "[a] party to a contract for the purchase or exchange of land who is entitled to a

decree of specific performance is also ordinarily entitled to a judgment for the rents and profits from the time he was entitled to a conveyance." *Id.*

Defendants seem to interpret this case to mean that they are entitled to rent because the Court ordered specific performance. The court's analysis supports the opposite proposition. *Plaintiff* was awarded specific performance in this case. Therefore, had Defendants been renting the property to a third-party after USPS was entitled to the conveyance, then *USPS, not Defendants*, would have been entitled to those rents and profits. The case does not stand for the proposition that Defendants are entitled to rents and profits for the period of time after they should have conveyed the property to USPS.

Defendants contend that *Ellis* "stands for the notion that the parties [must] be put back into the position they would have been if escrow closed timely." (ECF No. 68 at 4.) Applying *Ellis* to this case, if USPS had been timely conveyed the property, it would not have had to pay any rent to Defendants from that point forward. Instead, USPS would have been the rightful owners. Therefore, under *Ellis*, Plaintiff does not owe Defendants rent.

As to Defendants' alternative argument that they are entitled to the interest on the escrow account in lieu of holdover rent, Defendants do not allege that there was a waiver of sovereign immunity for them to be entitled to interest from the federal government. "Interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." *Library of Congress v. Shaw*, 478 U.S. 310, 311 (1986), *superseded by statute on other grounds*; *see also Fabricius v. United States*, No. CV-F-02-5597 REC/DLB, 2002 WL 31662301, at *1 (E.D. Cal. Oct. 18, 2002) ("Any waiver by the United States of its sovereign immunity cannot be implied but must be unequivocally expressed, and such waivers must be strictly construed in favor of the sovereign"). There is no indication USPS waived its sovereign immunity here. Defendants are not entitled to rent or escrow interest after November 30, 2015.

B.  **Property Taxes**

Defendants further contend that they are entitled to be reimbursed for property taxes paid from

6

December 1, 2015 through the close of escrow. USPS counters that if Defendants had not breached the contract, USPS would not have incurred any property taxes after being conveyed legal title because it is exempt from state taxes as a federal government entity. It is undisputed that USPS paid Defendants' property taxes in accordance with the terms of the lease agreement while the agreement was in effect. (ECF No. 52 at 4; ECF No. 58 at 3 n.4)

As Defendants acknowledge, the purpose of specific performance and other equitable remedies is to put the parties back in the position that they would have been in had the breach not occurred. (ECF No. 4); *see also Postal Instant Press, Inc. v. Sealy*, 43 Cal. App. 4th 1704, 1708-09 (1996) ("Under general contract principles, when one party breaches a contract the other party ordinarily is entitled to damages sufficient to make that party 'whole,' that is, enough to place the non-breaching party in the same position as if the breach had not occurred."). Here, the non-breaching party, USPS, would not have incurred any property taxes from December 1, 2015 through the close of escrow had the property been conveyed to them by the breaching party on November 30, 2015. *See M'Cullouch v. Maryland*, 17 U.S. 316, at *1 (1819) ("The state governments have no right to tax any of the constitutional means employed by the government of the Union to execute its constitutional powers."). Correspondingly, had Defendants not breached, they would not have incurred property taxes after that date. Putting the parties into the position they would have been in had the breach not occurred, Plaintiff does not owe Defendants reimbursement for property taxes.

C. **Insurance Premiums**

Defendants also contend that USPS should reimburse them for insurance premiums paid after November 30, 2015 because "any funds expended for the benefit of the Subject Property after that date were, in essence, expended for the benefit of USPS." (ECF No. 62 at 9.) Defendants cite *Ellis* for the proposition that USPS should pay for the insurance premiums as part of an accounting following the Court's order of specific performance. 60 Cal. 2d at 220. The Court disagrees. Defendants made those insurance payments to protect themselves as legal owners of the property, even if they were not

7

equitable owners at the time. In other words, Defendants paid that insurance for their *own* benefit. Indeed, USPS was not even responsible for insurance payments while the contract was in effect, because the benefit of paying for that insurance accrued to Defendants.

Moreover, had the property been timely conveyed in accordance with the terms of the contract, USPS would have had the option to make its own decisions regarding how to insure the property. They were denied that option by Defendants' breach, and Defendants cannot now foist their costs, which they would have not have incurred if they had not breached, on to USPS. Defendants are not entitled to reimbursement for insurance premiums.

In deciding not to order Plaintiff to pay rent, property taxes, or insurance to Defendants, the Court did not commit clear error in its initial judgment, nor was its initial decision manifestly unjust. Therefore, Defendants' motions under Rule 59(e) are DENIED.

## IV. **CONCLUSION AND ORDER**

For the reasons set forth above, Defendants' motions for a new trial, or, in the alternative for altered judgment are DENIED.

IT IS SO ORDERED.

Dated: **May 1, 2017**  /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE